IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 22-cv-1431-WJM-NRN

THOMAS A. ARCHIPLEY, II, on behalf of THOMAS E. ARCHIPLEY GST TRUST AGREEMENT F/B/O THOMAS A. ARCHIPLEY, II,

    Plaintiff,

v.

TELLURIDE COUNCIL FOR THE ARTS AND HUMANITIES D/B/A TELLURIDE ARTS,

    Defendant.

**ORDER DENYING DEFENDANT TELLURIDE ARTS' MOTION FOR STAY REGARDING PLAINTIFF'S PRIVATE NUISANCE CLAIM**

Before the Court is Defendant Telluride Council for the Arts and Humanities d/b/a Telluride Arts' Motion for Stay Regarding Plaintiff Thomas A. Archipley, II, on behalf of Thomas E. Archipley GST Trust Agreement, f/b/o Thomas A. Archipley, II's Private Nuisance Claim ("Motion for Stay").  (ECF No. 29.)  Plaintiff filed a response (ECF No. 34), and Defendant filed a reply (ECF No. 38).

For the following reasons, the Motion for Stay is denied.

**I. BACKGROUND AND PROCEDURAL HISTORY**

**A.**    **Factual Background**[1]

In 2019, Plaintiff purchased his third-floor condominium, situated next to the Telluride Transfer Warehouse ("Warehouse"), in Telluride, Colorado.  (¶ 1.)  The

---

[1] The Court takes the facts set forth in the Background section from the Complaint (ECF No. 1) and the briefs on the Motion for Stay.  Citations to (¶ __), without more, are references to the Complaint.

condo's master bedroom and guest bedroom are adjacent to the warehouse and are approximately ten feet from the Warehouse's southern wall.  (¶ 19.)  Since the roof collapsed in the late 1970s, the Warehouse has sat open to the elements, and the land use documents governing the repurposing of the building promised cultural events and acoustic music in an encased structure.  (¶¶ 1, 20.)  Telluride's earlier zoning approvals required Defendant to rehabilitate the Warehouse and install a historic, complete roof enclosing the venue.  (¶¶ 1, 21.)

However, in late spring of 2020, Defendant began hosting open-air concerts, often multiple times a week, with amplified music "blasting past 9:00 p.m."  (¶¶ 2, 23.)  Performances "rattled" Plaintiff's condo, and a neighbor recorded performances at 78 decibels and above.  (¶¶ 24, 25.)  Concerts can be held multiple times per week during the warmer months.  (¶ 26.)  Plaintiff and other neighbors repeatedly alerted Defendant to their concerns about the open-air venue plan and the impact the concerts were having on their "wellbeing."  (¶ 31.)  Plaintiff alleges that Defendant ignored their concerns and "charged ahead," orchestrating a public relations campaign against the neighbors.  (¶ 32.)

In March 2022, Defendant received approval from Telluride to dispense with the complete roof requirement.  (¶ 2.)  Although Plaintiff and his neighbors requested reasonable limits on concert noise, Defendant and Telluride refused.  (¶¶ 2, 33–38.)  Defendant continued to hold loud concerts and has so far declined to include noise standards in its land use approval, and declined to pursue any sound mitigation efforts or comply with state noise limits.  (¶¶ 2, 38–40.)  Additionally, Telluride has refused to enforce its noise ordinance against events at the Warehouse.  (¶ 2.)

On May 10, 2022, Plaintiff appealed the Planning & Zoning Commission's ("Planning Commission") Planned Use Development ("PUD") amendment approval to the Telluride Town Council ("Town Council"), trying to add reasonable noise mitigation conditions to the open-air concept. (¶ 42.) Nonetheless, the Town Council affirmed the Planning Commission's approval without conditions. (¶ 42.) Plaintiff is appealing that decision in state court in *Thomas A. Archipley II on behalf of the Thomas E. Archipley GST Trust Agreement v. Telluride Town Council; Telluride Planning and Zoning Commission; Town of Telluride; and Telluride Council for the Arts and Humanities d/b/a Telluride Arts*, San Miguel County District Court, Case No. 2022CV030021 (filed June 7, 2022) ("State Court Action"). (¶ 42.)

**B.     State Court Action**

In the State Court Action, Plaintiff seeks review of the Town Council's decision to affirm the Planning Commission's PUD amendment approval pursuant to Colorado Rule of Civil Procedure 106(a)(4) ("Rule 106"). (ECF No. 29 at 2; ECF No. 34 at 3.) The PUD amendment approval removed the requirement that Defendant restore the Warehouse to its historic condition with a complete roof. (ECF No. 34 at 4.)

Plaintiff names the Town Council, the Planning Commission, and Defendant as defendants in the State Court Action.[2] (ECF No. 29-1 at 1.) Rule 106 provides that a party may seek relief in a district court if (1) "any governmental body or officer or any lower judicial body exercising judicial or quasi-judicial functions has exceeded its jurisdiction or abused its discretion"; and (2) "there is no plain, speedy and adequate

---

[2] Plaintiff explains that he only named Defendant in the State Court Action because Colorado courts have held that a land use applicant is an indispensable party in a Rule 106 action challenging the applicant's approval. (ECF No. 34 at 4.)

3

remedy otherwise provided by law." Colo. R. Civ. P. 106(a)(4).  In such a case, "[r]eview shall be limited to a determination of whether the body or officer has exceeded its jurisdiction or abused its discretion, based on the evidence in the record before the defendant body or officer."  Colo. R. Civ. P. 106(a)(4)(I).  Additionally, Plaintiff asserts improprieties in violation of Colorado's Open Meetings Law.[3]  (ECF No. 34 at 3.)

In the State Court Action, Plaintiff seeks a limited determination that the Planning Commission (as affirmed by Town Council) abused its discretion and exceeded its jurisdiction in approving the PUD amendment.  (*Id.* at 6.)  He also seeks reversal and/or rescission of the PUD amendment approval and a remand for further proceedings before the Town.  (*Id.*)  His State Court Action does not—and, according to Plaintiff, by rule cannot—seek relief against Defendant itself.  (*Id.*)

**C.     Federal Court Action**

On June 7, 2022, Plaintiff filed this action against Defendant, seeking relief under both a private nuisance common law claim and the noise abatement/public nuisance statute, Colorado Revised Statutes § 25-12-101 *et seq*. ("Federal Court Action").  (ECF No. 1.)  Here, Plaintiff seeks: a judgment that Defendant has maintained a private nuisance; a judgment that Defendant has maintained a public nuisance in violation of § 25-12-103; an injunction prohibiting Defendant from maintaining a private and public nuisance that specifically provides that amplified music shall be prohibited, prescribes certain sound levels at certain times, and requires installation of sound measuring devices; or in the alternative, a judgment of damages.  (*Id.* at 10–11.)

---

[3] Plaintiff asserts that officials involved in the PUD amendment process did not provide full and timely notice of their attendance at meetings, did not provide an agenda for their attendance, and did not record minutes.  (ECF No. 34 at 5–6.)

4

## II. LEGAL STANDARD

The *Colorado River* doctrine governs whether a district court should stay or dismiss a federal suit pending the resolution of a parallel state court proceeding.  *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817–18 (1976).  The Supreme Court has held that federal courts may not use any of the abstention doctrines to refuse to exercise jurisdiction over a suit for non-equitable relief that duplicates an ongoing state litigation.  *See id.* at 813, 816–18.  However, the Supreme Court also concluded that judicial economy concerns may justify deferral of a federal suit when pending state litigation will resolve the issues presented in the federal case.  *See id.* at 817–20.  Under the abstention doctrines, a court is required to abstain in many circumstances; however, whether to decline to exercise jurisdiction pursuant to *Colorado River* is discretionary.  *Rienhardt v. Kelly*, 164 F.3d 1296, 1303 (10th Cir. 1999).

The Tenth Circuit has warned that the appropriate circumstances for deferral under the *Colorado River* doctrine are "considerably more limited than the circumstances appropriate for abstention" and must be "exceptional."  *Id.* (quoting *Colorado River*, 424 U.S. at 817–18).  Accordingly, the Court's "task in cases such as this is not to find some substantial reason for the exercise of federal jurisdiction . . . ; rather, the task is to ascertain whether there exist exceptional circumstances, the clearest of justifications, that can suffice under *Colorado River* to justify the surrender of the jurisdiction."  *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25–26 (1983)).  Simply stated, "[d]espite the temptation for federal courts to use the [d]octrine as a means of stemming the rising tide of litigation, suits in federal court

are not easily swept away by Colorado River." Id.

The first step under the Colorado River analysis is determining "whether the state and federal proceedings are parallel." Allen v. Board of Educ., Unified Sch. Dist., 436, 68 F.3d 401, 403 (10th Cir. 1995). Suits are parallel if "substantially the same parties litigate substantially the same issues in different forums." Id. The court examines "the state proceedings as they actually exist to determine whether they are parallel to the federal proceedings, resolving any doubt in favor of exercising federal jurisdiction." Id. (internal citations and quotation marks omitted). If the cases are not parallel, the federal court must exercise jurisdiction. Id. If the cases are parallel, the federal court must consider a multitude of other factors in deciding whether to surrender jurisdiction until the conclusion of state court proceedings. Id.

The Supreme Court has identified several non-exclusive factors to consider in evaluating whether to decline jurisdiction, including: (1) whether the state or federal court has assumed jurisdiction over property in dispute; (2) the inconvenience to the parties of the federal forum; (3) avoiding piecemeal litigation; (4) the order in which the courts obtained jurisdiction; (5) the vexatious nature of the litigation; (6) whether federal law provides the rule of decision; and (7) the adequacy of the state court proceeding to protect the federal plaintiff's rights. See Colorado River, 424 U.S. at 818. These factors are not a "mechanical checklist"; rather, the Court should "careful[ly] balanc[e] . . . the most important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." Fox v. Maulding, 16 F.3d 1079, 1082 (10th Cir. 1994).

## III. ANALYSIS

In the Motion for Stay, Defendant requests that the Court stay only the portion of this case involving Plaintiff's private nuisance claim. (ECF No. 29.)

First, the Court examines whether the State Court Action and the Federal Court Action are parallel. *Fox*, 16 F.3d at 1081. The parties in both lawsuits are essentially the same. Defendant is a defendant, and Plaintiff is a plaintiff, in both lawsuits. That there are additional defendants in the State Court Action is not significant. *See CNSP, Inc. v. City of Santa Fe*, 753 F. App'x 584, 589 (10th Cir. 2018) ("We fail to see how inclusion of Infinite Interests as a state-court defendant defeats the determination that the state and federal cases are parallel."). Thus, the parties are parallel.

Next, the Court addresses whether the parties are litigating "substantially the same issues in different forums." *Fox*, 16 F.3d at 1081. A finding of parallel proceedings is a threshold condition for engaging in the *Colorado River* analysis. *See Fox*, 16 F.3d at 1081. Even in the *Colorado River* context, however, exact identity of parties and issues is not required. Rather, state and federal proceedings are sufficiently parallel if "substantially the same parties litigate substantially the same issues." *Id.*; *see United States v. City of Las Cruces*, 289 F.3d 1170, 1193 (10th Cir. 2002).

Defendant "readily admits" that the two actions are not identical but nonetheless argues that there is substantial similarity and exceptional circumstances to warrant a stay. (ECF No. 38 at 7.)

> Many of the issues that Plaintiff raises in the C.R.C.P. 106(a)4 action will serve as a predicate for his private nuisance claim, particularly in light of a claim for an injunction. As has been stated above, the fact finder "must look at the character of the neighborhood, the magnitude, frequency, or duration of the defendant's activity exceeding

7

> neighborhood norms, and utility of the activity." If affirmed by the San Miguel District Court, the decision of the Town Council for the Town of Telluride will be significant to determining these factors. If reversed and the approval of the Planning and Zoning as well as the Town Council is set aside, this also will impact the magnitude, frequency and duration of the defendant's activity.

(*Id.* at 8.) Defendant further contends that the "exceptional circumstances" warranting a stay are to allow the parties to assess a private nuisance claim based upon the actual conditions imposed by the local zoning authority. (*Id.*) That final determination, within the context of the Plaintiff's challenge at the state court level, remains undetermined.

Importantly, the Supreme Court instructs that a federal court may enter a stay under the *Colorado River* doctrine only if it has "full confidence" that the parallel state litigation will end the parties' dispute. *See Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 277 (1988); *Sports Rehab Consulting LLC v. Vail Clinic, Inc.*, 2020 WL 4926114, at *6 (D. Colo. Aug. 21, 2020), *reconsideration denied*, 2021 WL 492492 (D. Colo. Feb. 10, 2021). Here, despite Defendant's arguments, the Court concludes that the issues in the State Court Action and Federal Court Action are not sufficiently parallel to warrant a stay of that portion of the Federal Court Action involving Plaintiff's private nuisance claim. While it is true that the issue being litigated in the State Court Action—namely, whether the PUD amendment approval removing the requirement that the Warehouse ultimately have an enclosed roof will be upheld—is relevant to the Federal Court Action, it is also just as true that the disposition of the State Court Action will in no way terminate the parties' dispute over the private nuisance claim.

If the San Miguel County District Court agrees with Plaintiff and remands the case, the Planning Commission and Town Council must still determine how to proceed

8

with plans for the Warehouse and whether to require an enclosed roof. Or, if the San Miguel County District Court upholds the PUD amendment approval, the Federal Court Action would remain in the same procedural posture, with the undersigned needing to resolve Plaintiff's Motion for Preliminary Injunction (ECF No. 24), which concerns *both* Plaintiff's private and public nuisance claims, as well as the parties' cross-motions for partial summary judgment (ECF Nos. 23 and 25), which solely concern Plaintiff's public nuisance claim. Neither outcome comes close to ending the dispute before this Court. As such, the Court easily finds that the actions are not parallel.

Given the finding that the lawsuits are not parallel, *Colorado River* abstention does not apply, and the Court need not address whether the *Colorado River* factors weigh in favor of a stay. *See City of Las Cruces*, 289 F.3d at 1182 ("[A] finding of parallel proceedings is a threshold condition for engaging in the *Colorado River* analysis.").

### IV. CONCLUSION

For the reasons stated above, the Court ORDERS that Defendant's Motion for Stay Regarding Plaintiff's Private Nuisance Claim (ECF No. 29) is DENIED.

Dated this 2nd day of November, 2022.

BY THE COURT:

_____
William J. Martinez
United States District Judge